UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

SPEEDFIT LLC,

                Plaintiff,                    COMPLAINT

    - against -                       (JURY TRIAL DEMANDED)

WOODWAY USA, INC

                Defendant.

--------------------------------------------------------x

      Plaintiff, Speedfit LLC ("Speedfit") by and through its attorney, John F. Vodopia, P.C., hereby alleges for its Complaint against Defendant, Woodway USA Inc., as follows:

<u>NATURE OF THE CASE</u>

      1.     This is an action that arises under the patent laws of the United States, including 35 U.S.C § 256, for correction of inventorship of certain US Patents, allegedly owned by Defendant Woodway USA, Inc. ("Woodway" or "Defendant"), to correctly identify Aurel A. Astilean ("Astilean"), and/or Dan Bostan ("Bostan"), as the true and sole inventor or inventors, and/or co-inventor or co-inventors, on the certain US Patents.

      2.     Defendant, Woodway, has misappropriated the unique concept, design, know-how and patent rights thereto, for a non-motorized treadmill with curved running surface, which treadmill was invented by Astilean and Bostan in 2008.  To wit, after Astilean brought the unique, non-motorized treadmill with curved running surface to Woodway, and taught Woodway how it works, how it must function and what it must look like. Woodway, at Astilean's direction, constructed a production model of the non-motorized treadmill with curved running surface. Woodway first identified, sold and marketed, the non-motorized treadmill with curved running surface using the brand name: SPEEDBOARD, Speedfit's registered trademark.  The

identification was effected by placing labels, embossed on and covering substantially the entire length of side covers fitted on both opposing sides of the base of the non-motorized treadmill with the curved running surface.  The labels also identified Woodway as the manufacturer of the SPEEDBOARD product.  On information and belief, during 2009, Woodway referred to the SPPEDBOARD non-motorized treadmill with curved running surface as the "Speedboard 2."

3.     As Woodway's sales of the Speedboard 2 began, during the spring and early summer of 2009, Woodway cut off negotiations between Astilean and Woodway to finalize a compensation package for Speedfit, Astilean and/or Bostan (hereinafter "Speedfit").  Plaintiff expected that its compensation was to be a portion of the sales of the non-motorized treadmill with curved running surface.  To this day, Woodway has not compensated any of Speedfit, Astilean or Bostan for the value Woodway has realized from the non-motorized treadmill with curved running surface, and Woodway's sales of same.  In early 2010, Woodway removed Speedfit's brand name SPEEDBOARD from the side labels and markets the non-motorized treadmill with curved running surface, or Speedboard 2, as the Woodway Curve.

4.     On information and belief, Woodway decided that it would not remunerate Speedfit for any of the value Woodway has realized from the Speedboard 2, including the sales of the Speedboard 2, and the Curve treadmills thereafter, and nevertheless convert Plaintiff's know-how and treadmill design, treating same as if developed instead by Woodway's design efforts alone.  In support thereof, the record shows not only that Woodway has never provided any payments to Speedfit, first sold the Speedboard 2 under Speedfit's brand name SPEEDBOARD and then removed Speedfit's brand name as a product identifier (2010), but to add insult to injury, Woodway filed a U.S. provisional patent application on the inventive subject matter, surreptitiously, without identifying Astilean and/or Bostan inventor(s) or co-inventor(s).

The US provisional application has since issued in multiple U.S. Patents, several of which are the certain US Patents that are the subject of this action.

5.     In greater detail, without informing Speedfit, and during the ongoing negotiations to define Speedfit's compensation for providing the valuable technology and know-how to Woodway, Woodway filed a patent application in the name of its engineer Nicholas Oblamski.  The record shows that Astilean directly taught Oblamski how to make and use the production model, i.e., the Speedboard 2, with reference to a wooden prototype built by Bostan and Astilean by August 2008, yet Woodway filed for patent rights to same as if it were its own.

6.     By filing the Oblamski provisional application, Woodway sought to take credit for – and assert patent rights to – Speedfit's non-motorized treadmill with curved running surface, the know-how and ornamental design associated therewith, as if these rights derived from Oblamski, Woodway's employee.  The conduct of Defendant, Woodway, caused and continues to cause to Plaintiff substantial injury and damage, while Defendant reaps the benefit from the sales of the Curve (formerly Speedboard 2).

7.     This action seeks relief and redress of Defendant's wrongful conduct by the correction of the certain US Patents, which derive from the Oblamski Provisional Application, in order to identify Astilean and/or Bostan as the true inventor(s) or co-inventor(s), the rights to which then pass to Plaintiff.

<u>THE PARTIES</u>

8.     Speedfit is a New York limited liability company formed and existing pursuant to the laws of the State of New York with its principal place of business at 79 Newtown Lane, East Hampton, New York 11937. Speedfit is in the business of fitness, including developing programs and machines, to facilitate achieving an individual's fitness goals.

9.     Astilean, a member of Speedfit, resides in East Hampton, New York. Astilean is a former world class athlete who founded Speedfit. Astilean, among other things, uses his patented fitness program that emphasizes speed training over long distance exercise. Astilean also invented a "fitness matrix" that allows individuals to determine their fitness level and therefore tailor their individual workouts. Astilean, a native Romanian who was once ranked seventh in the world in the decathlon, teaches a low-impact, injury-free, high-energy approach to fitness, making his programs available to the public irrespective of their fitness level. Astilean and Bostan invented, and Astilean and Speedfit developed the leg-powered, non-motorized treadmill with the curved running surface, which is the subject of this action.

10.     Woodway is a Wisconsin corporation which, among other things, manufactures exercise products, including treadmills such as the Woodway Curve, and maintains its corporate headquarters at W229 N591 Foster Court, Waukesha, Wisconsin 53186. Woodway sells various motorized treadmills, and because of the acts referred to hereinabove, now illegally sells Plaintiff's non-motorized treadmill with the curved running surface as the Curve (which it converted from Plaintiffs' know-how and design), to fitness facilities, athletes, professional sports organizations, armed forces and government facilities, colleges and universities, and for home and office fitness use. Woodway sells its products directly and through a network of distributors in the United States and internationally. In addition to its domestic facility in Waukesha, Wisconsin, Woodway has design and manufacturing facilities in Germany and Japan.

U.S. PROVISIONAL APPLICATION No. 61/161,027, U.S. PATENT APPLN. SER. NO. 13/235,065, U.S. PATENT NOS.  9,114,276, D736,866, D753,245 AND D753,776

11.     Woodway is the identified owner of United States Patent No. 9,114,276 (the " '276 Patent"), which was filed and accorded application serial no. 14/076,912 on or about November 11, 2013.  The application leading to the '276 Patent is a continuation application of

4

its parent application, serial no. 13/235,065, filed on September 16, 2011 and intentionally

abandoned by Woodway on May 17, 2015 (the "abandoned '065 application").  Woodway filed

a Letter of Express Abandonment on April 30, 2015, after two (2) Notices of Allowance, and

two (2) supplemental notices of allowance. Upon information and belief, Woodway abandoned

the '065 application in an attempt to deprive Speedfit of a claim for relief to correct inventorship

of same, which, under 35 USC § 256, only arises in issued patents, and not pending patent

applications.

12.    The abandoned '065 application is a continuation-in-part (CIP) application of

PCT/US2010/027,543, filed on September 16, 2011 (the " '543 PCT application"), which itself

derives priority under 35 U.S.C. § 119(e) from U.S. Provisional Patent Application No.

61/161,027, filed in the name of inventor Nicholas Oblamski on March 17, 2009 (the "Oblamski

Provisional Application").

13.    The Oblamski Provisional Application discloses a production model of a

motorless treadmill with curved running surface, constructed based on the wooden prototype that

was disclosed by video to Woodway by Astilean in December 2008 supplied in part to Woodway

in December 2008, and direction from Astilean to Oblamski between December 2008 and March

2009.  A copy of the Oblamski Provisional Application is attached hereto as Exhibit A.  A copy

of the '543 PCT application is annexed hereto as Exhibit B.  A copy of the abandoned '065

application is annexed hereto as Exhibit C. A copy of the express abandonment of the abandoned

'065 application filed on April 30, 2015 is attached hereto as Exhibit D.  The '276 Patent was

duly and legally issued by the United States Patent and Trademark Office on August 25, 2015, is

active and is entitled "Manual Treadmill and Methods of Using Same." A copy of the '276

patent is attached hereto as Exhibit E.

14.     Woodway also is identified as the owner of United States Design Patent No. D736,866 ("'D866 Patent"), filed and accorded application ser. No. 29/586,302, on or about October 14, 2014.  The application that issued as the 'D866 Patent is a continuation of application ser. No. 13/257,038, filed on March 9, 2011, which issued as US Patent No. 8,864,627 on October 21, 2014 (the " '627 Patent").  The application that issued as the '627 Patent is a National Stage application of PCT/US2010/026,731, filed on March 9, 2010 (the " '731 PCT application").  The '731 PCT application is a continuation application of the Oblamski Provisional Application. The 'D866 Patent was duly and legally issued by the United States Patent and Trademark Office on August 18, 2015, is active and is entitled "Treadmill." A copy of the '731 PCT application is attached hereto as Exhibit F.  A copy of the '627 Patent is attached hereto as Exhibit G.  A copy of 'D866 Patent is annexed hereto as Exhibit H.

15.     Woodway also is identified as the owner of United States Design Patent No. D753,245 ("'D245 Patent"), filed and accorded application serial no. 29/534,417, on or about July 28, 2015.  The application that issued as the 'D245 Patent is a divisional of the application that issued as 'D866 Patent, so also derives priority from the applicant that issued as the '627 Patent, the '731 PCT application and, therefore, the Oblamski Provisional Application. The 'D245 Patent was duly and legally issued by the United States Patent and Trademark Office on April 5, 2016, is active and is entitled "Treadmill." A copy of the 'D245 Patent is annexed hereto as Exhibit I.

16.     Woodway also is identified as the owner of United States Design Patent No. D753,776 ("'D776 Patent"), filed and accorded application serial no. 29/534,421, on or about July 28, 2015.  The application that issued as the 'D776 Patent is a divisional of the application that issued as the 'D866 Patent, so also derives priority from the applicant that issued as the '627

6

Patent, the '731 PCT application and, therefore, the Oblamski Provisional Application. The 'D776 Patent was duly and legally issued by the United States Patent and Trademark Office on April 12, 2016, is active and is entitled "Treadmill" A copy of the '776 Patent is annexed hereto as Exhibit J.

17.    The Oblamski Provisional Application, the '543 PCT application, the '065 Application, the '276 Patent, the '731 PCT application, the '627 Patent, the 'D866 Patent, the "D245 Patent and the "D776 Patent, all are directed to a non-motorized treadmill, with curved running surface, and the ornamental design thereof, invented by Astilean and Bostan. The Oblamski Provisional Application discloses that the treadmill includes, *inter alia,* means that allow the upper running surface of the running belt to follow a top curve of the curved non-motorized treadmill rather than "float" straight across the top of the curved treadmill.

18.    The Oblamski Provisional Application, therefore, is the foundation upon which all Woodway's allegedly owned patents find support, including the certain US Patents to which this action to correct inventorship is directed.  Because Astilean and Bostan are the true inventors of the Speedboard 2, which embodies the subject matter of the Oblamski Provisional Application, and because Astilean and Bostan assigned their rights to their invention to Speedfit on June 1, 2015 (Assignment attached hereto as Exhibit K), only Speedfit, and not Woodway has a valid claim to ownership of the any rights to the subject matter of the Oblamski Provisional Application, the '065 Application, of the '276 Patent, the 'D866 Patent, the 'D245 Patent and the 'D776 Patent.

19.    As introduced above, the subject matter invented by Astilean and Bostan was first disclosed to Woodway by Astilean on December 10, 2008, when Astilean played a video of him, his wife and one of his children walking and running on the aforementioned wooden

prototype ("wooden prototype").  The video was recorded sometime in August 2008, in Bostan's home in Canada.  During the video disclosure to Woodway on December 20, 2008, Astilean also explained to Douglas Bayerlein, Woodway's president and CEO, the need that a non-motorized treadmill with curved running surface has for a "means for slackening" the upper running surface of the treadmill running belt, to prevent the upper portion of same from floating up and losing the curved shape during use, which is crucial to the design and operation.  The means for slackening is the solution to the problem of the curved running surface comprising the upper part of the belt floating up off its bearing surface and losing its curved shape due to the lower part of the running belt sagging due to its weight.

20.   After reviewing Speedfit's Wooden Prototype on December 10, 2008, Woodway (i.e., Mr. Bayerlein) agreed to build a production version of the wooden prototype that it would market and sell as the Speedfit Speedboard.  Bayerlein directed Mr. Oblamski to build the production version of the wooden prototype.  Between approximately, December 12, 2008 through February 24, 2008, Oblamski worked under Astilean's direction to realize a production model of the Speedfit design, as evidenced by numerous email exchanges. Astilean provided Oblamski with access to videos of the operation of the wooden prototype and the operation of a slightly modified version of the wooden prototype, broadcast by the Discovery Channel in January 2009.  Astilean sent Oblamski the side rails of the Wooden Prototype so that Oblamski could measure and duplicate the curvature of the Wooden Prototype in the production model, which was proven to work.  Astilean spoke on the phone to Oblamski during this period of construction numerous times, and Oblamski verified that the production model of the Wooden Prototype was operational finally in late February or early March 2009.  The production model was shown and offered for sale by Woodway under Speedfit's brand name SPEEDBOARD, on

or about March 19, 2009 at the IHRSA tradeshow in San Francisco. The production model is referred to as the Speedboard 2, the Woodway Curve or the Woodway Product, one of several motor-less treadmill products with curved running surface that Woodway sells, and which derive from Astilean's and Bostan's inventive know-how.

JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and 1498(a). This complaint seeks to correct the inventorship of the Certain US Patents under 35 USC §1, et seq., including 35 USC § 256.

22.     This Court has personal jurisdiction over Defendant Woodway, as Woodway purposely availed itself of this judicial district by, among other things: (i) having its directors, agents, assignees, and employees attending trade shows and distributing products throughout New York State; (ii) a substantial part of the events or omissions giving rise to this case occurred in New York, including meetings between the representatives of Plaintiffs and Defendant's directors, agents, assignees, and employees; (iii) Woodway's directors, agents, assignees, and employees attended meetings with Plaintiffs in New York; (iv) Woodway sent product samples for inspection and modification to Plaintiffs in New York; and (v) Woodway's directors, agents, assignees, and employees phoned and e-mailed Plaintiffs at their New York residences regarding the treadmill and the venture.

23.     Furthermore, as demonstrated on Woodway's website www.woodway.com: (i) the treadmills are available for purchase by New York consumers directly on the website; (ii) Woodway travels to New York to promote sales of the treadmill; and (iii) Woodway has contracted to sell treadmills, including the Curve (as defined below) to various New York

athletic teams including the New York Yankees, Mets and Jets, and to the U.S. Military Academy at West Point, amongst many other New York residents.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1400 and 28 U.S.C. § 1391 and the Local Rules for the Southern and Eastern Districts of New York in that this is the district "where the Defendant resides, or where the Defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400 (b).

<u>FACTS COMMON TO ALL CLAIMS</u>

25.     Astilean first met Douglas G. Bayerlein ("Bayerlein"), president of Woodway, in 2002 at the Spring fitness equipment show in San Francisco, California. During that meeting Astilean discussed with Bayerlein Speedfit's innovative concepts in both exercise programs and exercise equipment. Bayerlein liked his ideas.

26.     On or about May 1, 2003, after a meeting between Astilean and Bayerlein at the Hilton Hotel in New York City, the parties entered into a non-disclosure/circumvention agreement and duly executed a writing embodying the terms of the non-disclosure/circumvention agreement. After the execution of the non-disclosure/circumvention agreement, the parties discussed Speedfit's novel idea of a non-motorized treadmill.

27.     In 2004, Astilean formally introduced to Woodway his invention of a non-motorized treadmill. Astilean provided to Woodway his specifications for the non-motorized treadmill and Woodway agreed to build a prototype. It was agreed that the prototype would be built at no cost to Speedfit or Astilean.

28.     In May 2005, during a visit to Woodway's Wisconsin headquarters by Astilean and his former business partner, Tami Mack, the parties entered into a second non-

disclosure/circumvention agreement and signed a writing embodying the terms of the second

non–disclosure/circumvention agreement which were orally conveyed to Plaintiffs.  The second

agreement refers back to the first agreement.  This was memorialized in the second non-

disclosure/circumvention agreement, which provided in pertinent part:

> 1.     Woodway has signed a non-disclosure agreement (the "NDA") related to
> any designs and other information supplied by Speedfit. The NDA continues to be
> applicable to all disclosures made by Speedfit and all actions taken by Woodway
> as a result of said disclosures, including, without limitation, the construction of
> prototypes of personal exercise equipment based on Speedfit's design.
>
> *                          *                          *
>
> 5.     Speedfit owns every right of every kind in and to its designs and any other
> information supplied to Woodway, and to any prototypes that Woodway builds as
> a result thereof…

29.     By August 15, 2005, the prototype was developed.  Speedfit, however, was not

yet satisfied with the treadmill and, at its request, Woodway sent to Speedfit two chassis with

belts (the working parts of the treadmill which eliminates the need for a motor) so that it could

continue to modify and perfect the design of the treadmill for end users.

30.     Approximately three days later, apparently eager to participate in Speedfit's

invention, on August 18, 2005, Woodway delivered to Speedfit a memorandum pursuant to

which it acknowledged Speedfit's invention of the non-motorized treadmill and the intellectual

property rights ancillary to it, along with proposals which the parties might pursue together on a

partnership or joint venture basis.  The proposed agreement provided several options for Speedfit

and Woodway to partner together in the sale of the Woodway production model and other

Woodway Curve products. Each and every option provided a component of payment to go to

Speedfit from Woodway. The proposals, however, were not accepted by Speedfit and the NDAs

and oral agreement of confidentiality remained in full force and effect.

31.     In or about December 2006 Astilean visited Woodway to supervise the construction of his latest version of the treadmill which Speedfit named the "Speedboard." This first Speedboard to be sold under Speedfit's registered trademark SPEEDBOARD (or "Speedboard 1") was completed in time for an industry show to be held in the Spring 2007 and it was prominently displayed at that show; the logos of both Woodway and Speedfit were affixed to the "Speedboard 1" at the show.

32.     The "Speedboard 1" was a great success at the show; Speedfit, however, was not completely satisfied with the design and continued to work on perfecting it.  The "Speedboard 1" contained a motorized mechanism to raise and lower the incline of the treadmill. Since Speedfit's invention was fundamentally based upon the concept of a non-motorized treadmill, Speedfit wanted to develop a non-motorized mechanism by which a user raised or lowered the incline on the "Speedboard 1", so that it would be easier to use and more versatile.

33.     Upon information and belief, after the Spring 2007 show, Woodway started to sell the "Speedboard 1" and to retain all the revenue generated from the sales.  Speedfit did not consent to the sales nor consent to the fact that the proceeds were kept solely by Woodway.

34.     By early 2008, frustrated with the inability of Woodway to build a fully non-motorized prototype up to industry and consumer standards, Speedfit undertook to design and build a non-motorized treadmill to its specifications.

35.     In early 2008, Astilean sought the help of Bostan, to support his efforts in improving an incline adjustment mechanism and a speed control mechanism of a flat, motorless treadmill that Astilean had been developing.  During their efforts, Astilean and Bostan invented and developed a motor-less or non-motorized treadmill with curved running surface that would

enable a user to vary the amount of exerted effort, not by adjusting the incline, but by positioning his/her feet on different locations along the curved surface.

36.     On March 30, 2008, Astilean and Bostan agreed to collaborate on a working embodiment of a motor-less treadmill with a slightly concave, curved running surface (the "new design"), pursuant to certain terms.  They agreed to "cooperation," by which Bostan would participate in developing a working model or prototype and Astilean would participate by securing patent protection for the new design, producing experimental models, producing, marketing and selling a production model of the new design.

37.     Over the next few months, the two worked together towards the ends of their respective allotted tasks.  Bostan's efforts included constructing several prototypes to prove out the new design.  By experimenting with the various prototypes, Astilean and Bostan realized that there was an inherent problem with the slightly concave curved surface of the new design. That is, as the belt revolved around the pulleys, the weight of the lower part of the closed loop running belt caused same to droop, the drooping of the lower portion caused a tautening of the upper part of the belt between the pulleys, which resulted in a floating up of the curved part off the bearings such that the curved portion between the pulleys more or less disappeared.

38.     While Bostan and Astilean could have added a means for holding the belt edges at the bearings, such solutions would have added an unacceptable amount of friction. Around midsummer 2008, however, they found a solution: embodying a means for slackening the upper running surface of the closed loop treadmill belt, so that the belt would not go taut and float up off the bearings at the belt edges, losing the curved shaped and rendering the treadmill unusable.

39.     By August 2008, Speedfit – through Astilean and Bostan – had built a wooden version of a fully non-motorized treadmill, with a curved running surface (i.e., the wooden prototype), which allows people to walk, jog, run and sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward and backward. Astilean and Bostan tested the wooden prototype in Montreal during August 2008 and video-recorded the operational wooden prototype.  The wooden prototype included the means for slackening the Woodway belt, as it maintained the upper part of the belt from floating up off the bearing surfaces reflecting the curved shape.

40.     Speedfit had now also resolved its concern about how to maneuver the inclines on a treadmill which it had identified on the previous design, with an altogether new design innovation of a curved treadmill. Instead of the traditional manual incline found universally on treadmills, the new invention (which became known as the "Speedfit SPEEDBOARD" treadmill or "Speedboard 2" treadmill, as introduced by Defendant in March 2009, and then renamed by Defendant as the "Curve" sometime in 2010.  The Speedboard 2 allows a user to simply move to the front or back of the Curve for a larger incline, or to the middle for no incline.

41.     On November 7, 2008, before the wooden prototype was presented to Woodway, Astilean filed a provisional patent application to protect the invention, under Patent Number 61/193,239 ("First Provisional Application").  The first provisional application disclosed the details of the inventive motor-less treadmill, with the curved running surface. including a broad solution to the problem of the upper running belt floating up.  The first provisional Application relied upon a marked-up photograph of the Wooden Prototype; Speedfit ultimately re-filed the first provisional application as Application Serial No. 61/280,265, on

November 2, 2009 (the " '265 Provisional Application").  A copy of the '265 Provisional

application is annexed hereto as Exhibit L.

42.     Thereafter, Speedfit disclosed the operational Wooden Prototype to Woodway,

including showing a video of the operational Wooden Prototype to Woodway personnel,

including Mr. Bayerlein and Michael Frank, on December 10, 2008.  Mr. Bayerlein testified that

this was the first time he had seen such a treadmill and he acknowledged that Astilean had

disclosed that the Wooden Prototype possessed a means for slackening (on December 10, 2008).

Bayerlein agreed that Woodway would build a metal production model of the inventive treadmill

for Speedfit, then and there, i.e., at the meeting in which the video was played on December 10,

2008.  While there was no commitment to an amount of financial remuneration to Astilean or

Woodway at that time for the expected sales of whatever production model would result from the

collaboration, both Astilean and Bayerlein understood that Speedfit would be compensated.

43.     Astilean took pictures of Bayerlein watching the video of the Wooden

Prototype, to which Mr. Frank responded that there was no reason for Astilean to take

photographs since Woodway was bound by the NDAs.

44.     To build the metal production model, Astilean then sent the side rails of the

Wooden Prototype and the specifications to Woodway so that Woodway could duplicate it in

metal as the production model. In connection with Woodway's production of the metal version

or production model of the Wooden Prototype, Bayerlein verbally (and expressly) confirmed to

Astilean that Woodway remained bound by the NDAs, and clearly evidencing Woodway's

understanding that at least Astilean was the inventor and that Woodway and its employees were

bound to maintain the details of the inventive design in confidence and as Speedfit's proprietary

subject matter.

45.     Woodway clearly understood that a confidentiality agreement existed – both orally and as an executed NDA – binding Woodway's employees to maintain the details of the inventive design as well as the details of the construction of the wooden version and the metal production model in confidence and as Speedfit's proprietary subject matter and know-how.

46.     The first introduction of what Woodway now sells as the Woodway Curve was disclosed by Speedfit on the Discovery Channel, Wreckreation Nation, in January 2009; the Wooden Prototype that Speedfit created was modified by Speedfit and featured in the Wreckreation video because the final metal prototype (i.e., the production model or Speedboard 2) had not yet been completed by Woodway (again, at Astilean's direction).

47.     By late February or early March 2009, Woodway had an operational production model of the Wooden Prototype ready for market, in view of the videos and written and oral communications between Astilean and Oblamski. Woodway used a slightly modified version of the side panels Speedfit displayed in the January 2009 discovery channel disclosure (video).  At that time Woodway released the Speedboard 2, "Speedfit SPEEDBOARD" was displayed on the labels covering the side panels, and as explained above, Woodway, about one (1) year later, unilaterally changed the name to "Woodway Curve," to effect conversion.

48.     The first times the Speedfit Speedboard 2 was publicly displayed by Woodway was at a fitness show in March 2009 at IHRSA USA and 2009 FiBO Germany; it was an instant success. After the shows, the Speedboard 2 was in just about every fitness catalog and hundreds of articles were on the Internet (displayed as "Speedfit Speedboard," while referred to internally as Speedboard 2). The new treadmill was featured in Style Magazine, which endorsed the concept of the product and many magazines articles and news articles about the new invention were written and published.

49.     Thus, prior to these public disclosures, Woodway – through its agents Mr. Bayerlein and Mr. Frank – viewed the operational wooden prototype in December 2008.

50.     On or about March 20, 2009, Woodway issued a press release attributing inventorship to Speedfit.

51.     Sometime in May 2009, again eager to secure a commercial interest in the Speedboard 2, Woodway provided to Speedfit what it denominated as a strategic evaluation agreement ("SEA"), which among other things, acknowledged that Speedfit developed the Speedboard 2 and therefore the Curve and was entitled to patent it.

52.     Speedfit refused to sign the SEA which it believed to be inherently inequitable. Instead, between May 2009 and August 2009, Astilean attempted unsuccessfully to discuss the SEA with Woodway and work on a fair and just agreement, given that Speedfit, by Astilean and Bostan, had invented and provided the know-how for designing the Speedboard 2 or Woodway Curve product, and the NDA was in full force and effect. Woodway was unresponsive to these overtures.

53.     Unbeknownst to Speedfit, as explained above, on or about March 17, 2009, certain employees of Woodway filed the Oblamski Provisional Application.  Upon information and belief, the information used by Woodway for the Oblamski Provisional Application was taken directly from Speedfit's design and invention of the Wooden Prototype and the completed production model they displayed at IRHSA 2009 as the SpeedFit Speedboard (again, identified internally as Speedboard 2). The Oblamski Provisional Application improperly identified Oblamski as inventor of the subject matter found therein, failing to identify Astilean and Dan Bostan as the inventors of the Speedboard 2.

54.     As late as August, 2009, Bayerlein affirmed to Astilean in writing that the purpose of the SEA was to protect Astilean and the invention.

55.     Upon information and belief, in early 2010, Woodway began to sell the Speedboard 2 without the Speedfit SPEEDBOARD brand name, as the Curve, although Woodway previously sold the Speedboard 2 with the registered trademark. Woodway, without Speedfit's permission, removed its trademark from the Speedboard 2, identifying same with its trademark Curve since.

56.     Woodway continues to manufacture and sell the Curve as its own product, to the exclusion of Speedfit. Moreover, Woodway has not tendered any royalties or other remuneration to Plaintiff from the sales of the Curve.

57.     Upon information and belief, in or about September 15, 2011, the Oblamski Provisional Application, the '627 Patent and the '276 Patent were assigned to Woodway by the purported inventors. Since that time, and upon information and belief, the '806, the 'D245 and the 'D776 Patents, which derive directly or indirectly from and incorporate by reference the entire subject matter of the Oblamski Provisional Application, and the know provided to Speedfit by Astilean, including the wooden prototype, have been assigned to Woodway.

FIRST CLAIM FOR RELIEF
(CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE '276 PATENT)
(Astilean and Bostan as Inventors)

58.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

59.     Astilean and Bostan are the true inventors of at least part of the subject matter of United States Patent No. 9,114,276 (the " '276 Patent"), which is assigned to Woodway and which derives from the Oblamski Provisional Application.

60.     With deceptive intent, Woodway identified Oblamski, not Astilean and Bostan, as the inventor on the Oblamski Provisional Application and therefore the '276 Patent; Oblamski is not an inventor of the subject matter of the Oblamski Provisional Application and, therefore, the '276 Patent.

61.     The omission of Astilean and Bostan as inventors of the Oblamski Provisional Application and the '276 Patent, occurred with no deceptive intent on the part of Astilean, Dan Bostan and Speedfit.

62.     By reason of the foregoing, Astilean and Bostan shall be named the true inventors on the '276 Patent and Oblamski shall be stricken as inventor.

SECOND CLAIM FOR RELIEF
(IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP
UNDER 35 U.S.C. § 256 ON THE '276 PATENT)
(Astilean and Bostan as Joint Inventors)

63.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

64.     Astilean and Bostan are inventors of the subject matter of the '276 Patent, which is assigned to Woodway and which derives its priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application.

65.     Woodway did not identify Astilean and Bostan as inventor of the Oblamski Provisional Application and, therefore, the '276 Patent; instead Woodway identified Oblamski as the sole inventor.

66.     The omission of Astilean and Bostan as inventors on the Oblamski Provisional Application and the '276 Patent occurred with deceptive intent on the part of Woodway and/or Oblamski.

67.     By reason of the foregoing, Astilean and Bostan shall be named joint inventors

on the '627 Patent.

### THIRD CLAIM FOR RELIEF
(CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE 'D866 PATENT)
(Astilean and Bostan as Inventors)

68.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

69.     Astilean and Bostan are the true inventors of at least part of the subject matter of United States Design Patent No. D736,866 (the " 'D866 Patent"), which is assigned to Woodway and which derives its priority from the '627 Patent and, therefore, the Oblamski Provisional Application.

70.     With deceptive intent, Woodway identified Oblamski, not Astilean and Bostan, as the inventor on the Oblamski Provisional Application and therefore the 'D866 Patent; Oblamski is not an inventor of the subject matter of the Oblamski Provisional Application and, therefore, the 'D866 Patent.

71.     The omission of Astilean and Bostan as inventor of the Oblamski Provisional Application and the 'D866 Patent, occurred with no deceptive intent on the part of Astilean, Dan Bostan and Speedfit.

72.     By reason of the foregoing, Astilean and Bostan shall be named the true inventors on the 'D866 Patent and Oblamski shall be stricken as inventor.

### FOURTH CLAIM FOR RELIEF
(IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP
UNDER 35 U.S.C. § 256 ON THE 'D866 PATENT)
(Astilean and Bostan as Joint Inventors)

73.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

74.     Astilean and Bostan are inventors of the subject matter of the 'D866 Patent,

which is assigned to Woodway and which derives its priority from the '627 Patent and, therefore, the Oblamski Provisional Application.

75.     Woodway did not identify Astilean and Bostan as inventor of the Oblamski Provisional Application and, therefore, the 'D866 Patent; instead Woodway identified Oblamski as the sole inventor.

76.     The omission of Astilean and Bostan as inventors on the Oblamski Provisional Application and the 'D866 Patent occurred with deceptive intent on the part of Woodway and/or Oblamski.

77.     By reason of the foregoing, Astilean and Bostan shall be named joint inventors on the 'D866 Patent.

<u>FIFTH CLAIM FOR RELIEF</u>
(CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE 'D245 PATENT)
(Astilean and Bostan as Inventors)

78.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

79.     Astilean and Bostan are the true inventors of at least part of the subject matter of United States Design Patent No. D753,245 (the " 'D245 Patent"), which is assigned to Woodway, issued from a divisional application of the application that issued as "D866, and which derives its priority from the '627 Patent and, therefore, the Oblamski Provisional Application.

80.     With deceptive intent, Woodway identified Oblamski, not Astilean and Bostan, as the inventor on the Oblamski Provisional Application and therefore the 'D245 Patent; Oblamski is not an inventor of the subject matter of the Oblamski Provisional Application and, therefore, the 'D245 Patent.

81.     The omission of Astilean and Bostan as inventor of the Oblamski Provisional Application and the 'D245 Patent, occurred with no deceptive intent on the part of Astilean, Dan Bostan and Speedfit.

82.     By reason of the foregoing, Astilean and Bostan shall be named the true inventors on the 'D245 Patent and Oblamski shall be stricken as inventor.

SIXTH CLAIM FOR RELIEF
(IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP
UNDER 35 U.S.C. § 256 ON THE 'D245 PATENT)
(Astilean and Bostan as Joint Inventors)

83.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

84.     Astilean and Bostan are inventors of the subject matter of the 'D245 Patent, which is assigned to Woodway, issued from a divisional application of the application that issued as "D866, and which derives its priority from the '627 Patent and, therefore, the Oblamski Provisional Application.

85.     Woodway did not identify Astilean and Bostan as inventor of the Oblamski Provisional Application and, therefore, the 'D245 Patent; instead Woodway identified Oblamski as the sole inventor.

86.     The omission of Astilean and Bostan as inventors on the Oblamski Provisional Application and the 'D245 Patent occurred with deceptive intent on the part of Woodway and/or Oblamski.

87.     By reason of the foregoing, Astilean and Bostan shall be named joint inventors on the 'D245 Patent.

SEVENTH CLAIM FOR RELIEF
(CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE 'D776 PATENT)
(Astilean and Bostan as Inventors)

22

88.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

89.     Astilean and Bostan are the true inventors of at least part of the subject matter of United States Design Patent No. D776 (the "'D776 Patent"), which is assigned to Woodway, issued from a divisional application of the application that issued as "D866, and which derives its priority from the '627 Patent and, therefore, the Oblamski Provisional Application.

90.     With deceptive intent, Woodway identified Oblamski, not Astilean and Bostan, as the inventor on the Oblamski Provisional Application and therefore the 'D776 Patent; Oblamski is not an inventor of the subject matter of the Oblamski Provisional Application and, therefore, the 'D776 Patent.

91.     The omission of Astilean and Bostan as inventor of the Oblamski Provisional Application and the 'D776 Patent, occurred with no deceptive intent on the part of Astilean, Dan Bostan and Speedfit.

92.     By reason of the foregoing, Astilean and Bostan shall be named the true inventors on the 'D776 Patent and Oblamski shall be stricken as inventor.

EIGHTH CLAIM FOR RELIEF
(IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP
UNDER 35 U.S.C. § 256 ON THE 'D776 PATENT)
(Astilean and Bostan as Joint Inventors)

93.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

94.     Astilean and Bostan are inventors of the subject matter of the 'D776 Patent, which is assigned to Woodway, issued from a divisional application of the application that issued as 'D866, and which derives its priority from the '627 Patent and, therefore, the Oblamski

23

Provisional Application.

95.     Woodway did not identify Astilean and Bostan as inventor of the Oblamski

Provisional Application and, therefore, the 'D776 Patent; instead Woodway identified Oblamski

as the sole inventor.

96.     The omission of Astilean and Bostan as inventors on the Oblamski Provisional

Application and the 'D776 Patent occurred with deceptive intent on the part of Woodway and/or

Oblamski.

97.     By reason of the foregoing, Astilean and Bostan shall be named joint inventors

on the 'D776 Patent.

NINTH CLAIM FOR RELIEF
(DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 AND 2202)

98.     Plaintiffs repeat and reallege all allegations contained in all the foregoing

paragraphs of this complaint as if they were fully stated herein.

99.     Astilean and Bostan are the inventors or joint inventors of the Oblamski

Provisional Application, the '276 Patent, the 'D866 Patent, the 'D245 Patent and the 'D776

Patent.

100.     Astilean and Bostan are not identified as inventors or as joint inventors of the

Oblamski Provisional Application, the '276 Patent, the 'D866 Patent, the 'D245 Patent and the

'D776 Patent.

101.     Consequently, an actual, present, and justiciable controversy has arisen

concerning the inventorship of the Oblamski Provisional Application, the '276 Patent, the 'D866

Patent, the 'D245 Patent and the 'D776 Patent.

102.     Plaintiff seeks declaratory judgment from this Court that Astilean and Bostan

are the true sole inventors or are joint inventors of the '276 Patent, the 'D866 Patent, the 'D245

24

Patent and the 'D776 Patent, and any other patents owned or controlled by Defendant of which Astilean and Bostan are the inventors or joint inventors, based on the fact that Astilean and Bostan are the sole inventor or joint inventor of the Oblamski Provisional Application and the abandoned '065 application, and therefore, any injunctive relief necessary to enforce their rights under that declaratory judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Speedfit LLC and Aurel A. Astilean, demand judgment against Defendant, Woodway USA, Inc., as follows:

1)      On the First Claim, issuing an order to the director of Patents to correct the '276 Patent to reflect that Astilean and Dan Bostan are the sole inventors of the subject matter of the '276 Patent that derives from the Oblamski Provisional Application.

2)      On the Second Claim, issuing an order to the director of Patents to correct the '276 Patent to reflect that Astilean and Dan Bostan are co-inventors of the subject matter of the '276 Patent that derives from the Oblamski Provisional Application.

3)      On the Third Claim, issuing an order to the director of Patents to correct the 'D866 Patent that derives from the Oblamski Provisional Application.

4)      On the Fourth Claim, issuing an order to the director of Patents to correct the 'D866 Patent to reflect that Astilean and Dan Bostan are the sole inventors of the subject matter of the 'D866 Patent that derives from the Oblamski Provisional Application.

5)      On the Fifth Claim, issuing an order to the director of Patents to correct the 'D245 Patent to reflect that Astilean and Dan Bostan are the sole inventors of the subject matter of the 'D245 Patent that derives from the Oblamski Provisional Application.

6)      On the Six Claim, issuing an order to the director of Patents to correct the 'D245 Patent to reflect that Astilean and Dan Bostan are co-inventors of the subject matter of the 'D245 Patent that derives from the Oblamski Provisional Application.

7)      On the Seventh Claim, issuing an order to the director of Patents to correct the 'D776 Patent to reflect that Astilean and Dan Bostan are the sole inventors of the subject matter of the 'D776 Patent that derives from the Oblamski Provisional Application.

8)      On the Eighth Claim, issuing an order to the director of Patents to correct the 'D776 Patent to reflect that Astilean and Dan Bostan are co-inventors of the subject matter of the 'D776 Patent that derives from the Oblamski Provisional Application.

9)      On the Ninth Claim, declaring that Astilean and Dan Bostan are the sole inventor or are coinventors of the subject matter of the '276 Patent, the 'D866 Patent, the 'D245 Patent and the 'D776 Patent, which derive from the Oblamski Provisional Application.

10)      Granting to Plaintiffs such other and further relief as to this Court may seem just and proper, including an award of punitive damages against Defendant.

Dated: Huntington, New York
       February 10, 2017

JOHN F. VODOPIA, P.C.

By:   */s/ John F. Vodopia*
      JOHN F. VODOPIA (6450)
      191 New York Avenue
      Huntington, NY 11743
      (631) 673-7555

      jvodopia@gmail.com