# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
SPEEDFIT LLC,

                        Plaintiff,

  - against -

WOODWAY USA INC.

                       Defendant.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 17-768

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I. PRELIMINARY STATEMENT

Plaintiff Speedfit LLC ("Plaintiff" or "Speedfit") commenced this action on February 10, 2017 under the patent laws of the United States, including 35 U.S.C. § 256, for correction of inventorship of certain U.S. Patents allegedly owned by Defendant Woodway USA, Inc. ("Defendant" or "Woodway"). *See generally* Complaint ("Compl."). Plaintiff seeks to identify Aurel A. Astilean ("Astilean"), and/or Dan Bostan ("Bostan"), "as the true and sole inventor or inventors, and/or co-inventor or co-inventors, on the certain U.S. Patents" in connection with the Speedboard 2, a non-motorized treadmill with a curved running surface. Compl. [DE 1] ¶¶ 1-2.

Defendant Woodway has filed a letter motion to compel the production of certain documents. *See* DE 53. The motion stems from a dispute among the parties as to whether and to what extent Plaintiff's counsel waived attorney-client privilege by affirmatively introducing certain documents at the deposition of Speedfit's founder, Alex Astilean, on July 10, 2018. *Id*. Astilean was testifying in both his personal capacity and as a Rule 30(b)(6) witness for the Plaintiff at the time. *Id*. The primary point of contention is Plaintiff's Deposition Exhibit 2 (the "Subject Exhibit"), which Defendant Woodway says contains email communications between Astilean and one of his attorneys, Jaime Corio. *Id*. Woodway's attorney represents that once she

saw the document, she immediately returned it and notified Speedfit's counsel of the apparent privileged status of the email.

Defendant's counsel seeks (1) an order compelling Speedfit to turn over all documents related to the Subject Exhibit, notwithstanding the privileged status of the email communications contained in it and (2) a privilege log setting forth any document being withheld on the basis of attorney-client privilege. *See generally* Defendant's Letter Motion to Compel ("Def.'s Mot.") [DE 53]. For the reasons which follow, Defendant Woodway's motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

### A. Pertinent Facts

According to Speedfit, Astilean and Bostan invented a non-motorized treadmill with curved running surface in 2008. Compl. ¶ 2. By August 2008, Speedfit, through Astilean and Bostan, had built a wooden version of a fully non-motorized treadmill, with a curved running surface (*i.e.*, the Wooden Prototype). *Id.* ¶39. Astilean and Bostan tested the Wooden Prototype in Montréal during August 2008 and video-recorded the operational wooden prototype. *Id.* Astilean brought the concept to Woodway and "taught Woodway how it works, how it must function and what it must look like." Compl. ¶ 2. On November 7, 2008, before the Wooden Prototype was presented to Woodway, Astilean filed a provisional patent application to protect the invention, under Patent Number 61/193, 239 ("First Provisional Application" or "FPA"). *Id.* ¶ 41. Thereafter, Speedfit disclosed the operational Wooden Prototype to Woodway, including showing a video of the operational Wooden Prototype to Woodway personnel, including Douglas Bayerlein and Michael Frank on December 10, 2008. *Id.* ¶ 42. Bayerlein agreed to

build a production version of the wooden prototype that it would market and sell as the Speedfit Speedboard. *Id*. ¶ 20.

At Astilean's direction, Woodway constructed a production model of the non-motorized treadmill with curved running surface which Woodway eventually sold and marketed using the brand name SPEEDBOARD, Speedfit's registered trademark. *Id*. ¶ 2. Labels were placed on the side covers of the non-motorized treadmill identifying the product as SPEEDBOARD and also identifying Woodway as the manufacturer of the SPEEDBOARD product. *Id.*

Plaintiff alleges that the parties were engaged in negotiations concerning a compensation package for Speedfit, Astilean, and Bostan for work in connection with the Speedboard 2 in the Spring of 2009 — which Plaintiff expected to be based on a portion of the Speedboard 2's sales — when Woodway cut off negotiations. *Id.* ¶ 3. Plaintiff further alleges, *inter alia*, that unbeknown to Speedfit, on or about March 17, 2009, certain employees of Woodway filed a provisional patent application for the subject matter underlying the Speedboard 2. The application was filed under the name of Woodway engineer Nicholas Oblamski, seeking to take credit for Speedfit's invention as well as the know-how and design associated with it.[1] *Id*. ¶¶ 5, 7, 53. On that basis, Speedfit asserts that Woodway misappropriated the unique concept, design, know-how and patent rights for the Speedfit 2 which belonged to Speedfit and seeks redress of Woodway's wrongful conduct by correction of the certain US Patents derived from the Oblamski provisional patent application.

---

[1] According to Plaintiff, Astilean and Bostan assigned their rights to their invention to Speedfit on June 1, 2015. *See* Compl. ¶18.

### B. Relevant Procedural Posture

Plaintiff filed the Complaint on February 10, 2017. *See* DE 1. The Court held a Rule 16(b) Initial Conference and set a preliminary discovery schedule, including a discovery status conference on October 30, 2017. *See* October 30, 2017 Civil Conference Minute Order [DE 20]. On March 27, 2018 the Court conducted the Discovery Status Conference, during which the Court (1) discussed pending discovery disputes; (2) advised counsel how to proceed with depositions, including the deposition of Astilean in both his individual capacity and in his capacity as principal of Speedfit; (3) set a fact discovery deadline of July 17, 2018; and (4) scheduled a Telephone Status Conference for July 25, 2018. *See* March 27, 2018 Civil Conference Minute Order [DE 50].

On July 10, 2018, Woodway took the deposition of Astilean in both his individual capacity and as a representative of Speedfit. *See* Def.'s Mot. at 1. During the deposition, counsel for Plaintiff introduced the Subject Exhibit at issue into evidence, despite being forewarned by Defendant's counsel that it contained apparently privileged attorney-client communications. *Id.* Subsequent to the introduction of the Subject Exhibit at the deposition, Defendant asserted that Plaintiff had waived privilege with respect to the Subject Exhibit and its related subject matter and requested all related documents. *Id.*

The parties discussed the matter at the July 25, 2018 Telephone Status Conference with the Court. During the Conference, the Court directed Defendant's counsel to provide a copy the relevant section of the deposition transcript to Plaintiff's counsel and to promptly meet and confer regarding the disputed issue of whether the privilege was waived. In the event of an impasse, Defendant's counsel was directed to file a motion on or before August 6, 2018. After the meet-and-confer, Defendant's counsel filed the instant motion to compel, asserting that

Speedfit was unwilling to (1) produce documents related to the Subject Exhibit or (2) identify, through a privilege log or otherwise, materials being withheld as privileged.  *Id.*

### III.  PLAINTIFF'S MOTION TO COMPEL

#### A.  The Subject Deposition

The Astilean deposition was conducted on July 10, 2018.  *See* Pl.s' Mot. at 1.  While deposing Astilean in his individual capacity, counsel for Woodway asked when Astilean first had knowledge of Woodway's March 17, 2009 provisional patent application.  *See* July 10, 2018 Deposition of Alex Astilean ("Astilean Dep. Tr.") annexed to Def.'s Mot. as Ex. B at 178:2-22.  Astilean provided that it was December 2012.  *Id.*  In subsequent questioning by Defendant's counsel, Astilean referenced and relied on a document containing (1) a screenshot of an April 7, 2009 email from a Woodway employee to Astilean stating, *inter alia*, that Astilean's design was not a new design and was previously patented by Precor in 1998, and (2) an attachment to the email, which appeared to be an annotated copy of the cover sheet of Woodway's March 17, 2009 provisional patent application.  *See id.* at 180:11-181:3.  Speedfit's counsel gave the document to Woodway's counsel, who made copies and introduced the document into evidence as Woodway Deposition Exhibit 32 ("Exhibit 32").  *Id* at 181:3-182:3.  Exhibit 32 is the Subject Exhibit and is annexed to Defendant's instant motion as Exhibit C.  *See* Def.'s Mot., Ex. C.  Thereafter, counsel for Woodway asked Astilean questions about Exhibit 32, in response to which Astilean confirmed Exhibit 32's contents and stated that Exhibit 32 was really an attachment to an email entitled "Sneaky Doug."  *See* Astilean Dep. Tr. at 182:2-183:12.

When the parties took a break in the deposition, counsel for Speedfit, unsolicited, gave Woodway's counsel a document purportedly in support of Astilean's testimony.  *See* Def.'s Mot. at 1.  Upon review, Woodway's counsel identified the document as the "Sneaky Doug" email,

containing an email exchange between Astilean and his former attorney, Jamie Corio ("Corio") The email appeared to have Exhibit 32 attached to it. *See id.* Counsel for Woodway immediately returned the document to Speedfit's counsel and noted the apparent privileged nature of the email correspondence. *Id.* Upon resuming the deposition, counsel for Woodway placed this information on the record. *See* Astilean Dep. Tr. at 183:22-184:3.

Later that day, during the Fed. R. Civ. P. 30(b)(6) portion of the deposition, Speedfit's counsel affirmatively introduced the apparently privileged "Sneaky Doug" document as the Subject Exhibit to support Astilean's testimony as to when Astilean first learned of Woodway's March 17, 2009 provisional patent application. *See* July 10, 2018 Rule 30(b)(6) Deposition of Speedfit LLC ("Speedfit Dep. Tr."), annexed to Def.'s Mot. as Ex. E, at 77:4-79:6; *see also* the Subject Exhibit annexed to Def.'s Mot. as Ex. D. The Subject Exhibit contains: (1) a July 8, 2018 email from Astilean to Speedfit's counsel, forwarding a December 6, 2012 email from Astilean to himself entitled "Sneaky Doug – Woodway – email;" (2) a forwarded December 2012 email exchange between Astilean and Attorney Corio with the subject "Re: lttr. to chapco"; (3) the December 2012 "Re: lttr. to chapco" emails, including (i) a December 6, 2012 email from Astilean to Corio concerning Astilean's reaction to Woodway's March 17, 2009 provisional patent application, (ii) an attachment to the December 6, 2012 email from Astilean to Attorney Corio, made up of the contents of Exhibit 32 — the April 7, 2009 email from a Woodway representative to Astilean and an annotated cover page of Woodway's March 17, 2009 provisional patent application, and (iii) a December 5, 2012 email marked "confidential" from Attorney Corio to Astilean concerning a "proposed letter" and "OA" with an attachment entitled "AAstilean – Chapco – Lttr. 12.5.12.docx," the contents of which are not in the Subject Exhibit; and (3) a July 8, 2018 email marked "confidential" from Plaintiff's counsel to Astilean with an

attachment entitled "tree from oblamski prov appln (1).pdf," the contents of which are not contained in the Exhibit. *See* Def.'s Mot., Ex. D.

B. **Defendant's Position**

Defendant's counsel asserts that Plaintiff waived the attorney-client privilege with respect to the Subject Exhibit and that Woodway is therefore entitled to obtain all documents "discussing the same subject matter," including, *inter alia*, all emails in the "Sneaky Doug – Woodway – email" thread and related documents and all emails in the "lttr. to chapco" email thread and related documents. *See* Def.'s Mot. at 2. At a minimum, Defendant argues that a privilege log should be provided to Woodway to evaluate whether there are any associated documents, and if so, the reasons they are being withheld. *Id.*

Without a privilege log, Defendant argues, it is unable to analyze the relevancy and claim of privilege over any associated documents or the importance of such documents. *Id.* at 2. Defendant maintains that, under the circumstances, it is likely that the requested documents are relevant since Speedfit appears to contend that Woodway's disclosures to the U.S. Patent and Trademark Office are relevant to its claim for relief. To the extent the requested documents relate to what Speedfit and Astilean have said about those disclosures, Defendant argues they should be produced. *Id.*

C. **Plaintiff's Position**

Speedfit's counsel concedes that Speedfit likely waived the attorney-client privilege for the written content of Astilean's December 6, 2012 email communication to his former attorney Jamie Corio when it introduced the Subject Exhibit into evidence at the Rule 30(b)(6) portion of the deposition. *See* Pl.'s Opposition to Defendant's Letter Motion to Compel ("Pl.'s Opp'n") [DE 54] at 1. However, Plaintiff contends that (1) the waiver does not extend to undisclosed

communications under Fed. R. Evid. 502(a), and (2) the privilege is not waived for the December 5, 2012 email from Attorney Jamie Corio to Astilean and the "AAstilean – Chapco – Lttr. 12.5.12" letter attached to that email. *Id.* Plaintiff argues that it did not intend to waive privilege with respect to the content of the December 5, 2012 email or the attached letter since the email and attachment concern different subject matter. *Id.* at 2. Speedfit's counsel emphasizes that Speedfit only introduced the Subject Exhibit to indicate the date Astilean first discovered that Woodway filed patent applications related to subject matter underlying the Speedboard 2. *Id.* at 2.

## IV. DISCUSSION

### A. Applicable Legal Standards

#### 1. *Attorney-Client Privilege*

The attorney-client privilege safeguards confidentiality and transparent communications between client and counsel. *See, e.g., United States v. Sabbeth*, 34 F. Supp. 2d 144, 152 (E.D.N.Y. 1999) (noting "the overriding importance of the attorney-client privilege"); *see also In re Grand Jury Investigation*, 399 F.3d 527, 531 (2d Cir. 2005) ("[t]he purpose of the attorney-client privilege is to promote open communication between attorneys and their clients so that fully informed legal advice may be given") (internal quotation omitted); Restatement (Third) of the Law Governing Lawyers § 68 cmt. c (2000) ("The rationale for the [attorney-client] privilege is that confidentiality enhances the value of client-lawyer communications and hence the efficacy of legal services."). The attorney-client privilege applies to "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia,* 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cnty. of Erie,* 473 F.3d 413, 419 (2d Cir. 2007) ); *McNamee v.*

8

*Clemens*, No. 09 Civ. 1647, 2014 WL 6606661, at *2 (E.D.N.Y. Nov. 19, 2014). "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO,* 119 F.3d 210, 214 (2d Cir. 1997); *see Mejia,* 655 F.3d at 132.

The attorney-client privilege, however, is not absolute. *Neogenix Oncology, Inc. v. Gordon*, No. 14-cv4427, 2015 WL 13735953, at *6 (E.D.N.Y. July 31, 2015). In limited circumstances, it can be waived. *Scott v. Chipotle Mexican Grill, Inc.*, 94 F.Supp.3d 585, 598 (S.D.N.Y. 2015) ("With some exceptions, the attorney-client privilege is automatically waived when a privileged communication is disclosed to a third party or litigation adversary.") (citing *See Ricoh Co., Ltd. v. Aeroflex Inc.,* 219 F.R.D. 66, 70 (S.D.N.Y. 2003); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP,* No. 03 Civ. 5560, 2007 WL 1837133, at *2 (S.D.N.Y. June 27, 2007) ("*Kingsway II*") ("The attorney-client privilege is not absolute, however, and may be waived through, among other things, the voluntary disclosure of a privileged communication to a third party, especially a litigation adversary.") (collecting cases)). One such waiver is "subject-matter waiver." *Neogenix Oncology, Inc.*, 2015 WL 13735953, at *6.

   2.   *Subject Matter Waiver*

Subject matter waiver is a type of implied waiver "which allows the attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic has been disclosed," and is grounded in "fairness considerations at work in the context of litigation." *Falise v. Am. Tobacco Co.*, 193 F.R.D. 73, 84 (E.D.N.Y. 2000) (quoting *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)). In applying subject matter waiver, "courts have invoked the metaphors of 'sword' and 'shield' to describe the type of strategic assertion of privilege that would implicate fairness considerations." *Falise*, 193 F.R.D. at 84; *see, e.g.,*

9

*Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.*, No. 95–CV–8833, 1997 WL 801454 at *1 (S.D.N.Y. Dec. 31, 1997); *In re Kidder Peabody*, 168 F.R.D. 459, 473 (S.D.N.Y. 1996); *Stratagem Development Corp. v. Heron Intern. N.V.*, 153 F.R.D. 535, 545 (S.D.N.Y. Feb. 28, 1994). In general, [t]he test for waiver is "whether the disclosure at issue has 'substantially increased the opportunities for potential adversaries to obtain the information.'" *In re Vitamin C Antitrust Litig.*, No. MD 06–1738, 2011 WL 197583, at *2 (E.D.N.Y. Jan. 20, 2011) (quoting *In re Visa Check/Master Money Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y. 2000)); *see NL Indus., Inc. v. ACF Indus. LLC*, No. 10CV89W, 2015 WL 4066884, at *5 (W.D.N.Y. July 2, 2015).

Federal Rule of Evidence 502 codifies the doctrine of subject-matter waiver where disclosure is made in a federal proceeding or to a federal office or agency. *See* Fed. R. Evid. 502(a). Specifically, Rule 502 of the Federal Rules of Evidence, "titled 'Attorney-Client Privilege and Work Product; Limitations on Waiver,' provides that 'when [a] disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding *only if*: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; *and* (3) they ought in fairness to be considered together.'" *In re GM LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 533 (quoting Fed. R. Evid. 502(a)) (emphasis added); *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369, 371 (S.D.N.Y. 2015) (recognizing that "Fed. R. Evid. 502(a) addresses the precise issue of when a partial disclosure of protected information results in a waiver of undisclosed information."). "As the Advisory Committee Notes state, the Rule — enacted in 2008 — 'provides that a voluntary disclosure in a federal proceeding or to a federal office or

10

agency . . . generally results in a waiver *only* of the communication or information disclosed.'" *Id.* (quoting Fed. R. Evid. 502, Committee Notes (emphasis in original)). "In particular, such disclosure results in a subject matter waiver of undisclosed materials only in those 'unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.'" *Id*. (quoting Fed. R. Evid. 502, Committee Notes); *see Mitre Sports Int'l Ltd.*, 304 F.R.D. at 372 ("Subject matter waiver is reserved for the rare case where a party either places privileged information affirmatively at issue, or attempts to use privileged information as both a sword and a shield in litigation."); *United States v. Treacy*, No. S208 CR 366, 2009 WL 812033, at *3 (S.D.N.Y. March 24, 2009) (subject-matter waiver of attorney-client privilege necessary "in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary").

With this legal framework in mind, the Court considers whether and to what extent attorney-client was waived with respect to the Subject Exhibit.

### B. Analysis

Initially, the Court points out that the Subject Exhibit has two parts: (1) an email from Astilean to his counsel on July 8, 2018, forwarding a December 2012 email exchange between Astilean and Corio containing, as attachments, the contents of Exhibit 32 and a document entitled "AAstilean – Chapco Lttr. 12.5.12.docx," the contents of which are not visible; and (2) a reply email from Plaintiff's counsel with an attachment entitled, "tree from oblamski prov appln (1).pdf," the contents of which are not visible. *See* Def.'s Mot., Ex. D.

In the Court's view, the emails exchanged between Astilean and Speedfit's counsel on July 8, 2018 are subject to attorney-client privilege. They are confidential attorney-client

11

communications made for purposes of obtaining or providing legal advice. No other parties are copied on the emails and Attorney Corio's email contains a confidentiality notice. *See* Def.'s Mot., Ex. D. Similarly, attorney-client privilege also applies to the December 2012 emails between Astilean and Attorney Corio. The emails are confidential attorney-client communications, containing Astilean's candid impressions and Corio's legal counsel in connection with the instant patent dispute. *Id.* Further, no other parties are copied on the emails and Corio's email again contains a confidentiality notice. *Id.*

The parties do not dispute the privileged nature of these emails. Instead, the crux of the parties' disagreement concerns whether and to what extent privilege was waived, particularly with respect to the December 2012 emails between Astilean and Attorney Corio, which Astilean forwarded to Speedfit's trial counsel here on July 8, 2018, and whether undisclosed communications must be produced under a subject matter waiver. Having determined that the emails contained in the Subject Exhibit are protected by attorney-client privilege – and keeping in mind that Plaintiff's counsel affirmatively introduced the Subject Exhibit at the Rule 30(b)(6) deposition -- the Court proceeds to an analysis under Fed. R. Evid. 502 to determine whether production of the undisclosed communications here is required on a theory of subject matter waiver.

Under the first prong of the analysis, the Court considers whether the waiver is intentional. Significantly, Speedfit's counsel introduced the Subject Exhibit *after* Woodway's counsel returned the document to him during a break in the deposition, flagging it as privileged. Further, as noted, both the December 5, 2012 email from Attorney Corio to Astilean and the July 8, 2018 email from Plaintiff's counsel to Astilean contain confidentiality notices. As such, Plaintiff's counsel was on notice twice over that the contents of the Subject Exhibit were

privileged.  Nonetheless, Plaintiff's counsel affirmatively introduced the Subject Exhibit into evidence and asked Astilean questions about the Subject Exhibit and its significance in the instant litigation.  As such, the Court finds that Speedfit's counsel intentionally waived attorney-client privilege associated with the Subject Exhibit itself.  *See Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016) (finding withdrawal of claim of privilege of a deposition exhibit to be intentional and collecting similar cases at footnote 2).  In fact, Plaintiffs' counsel himself conceded in his opposition to the motion that "Speedfit likely waived privilege" for the content of the email.  Pls.' Opp'n at 1.  However, Plaintiffs' counsel emphatically disagrees that the waiver did not extend to undisclosed communications referenced in the email.  *Id.*

Under the second prong of the analysis, the Court must determine whether the disclosed and undisclosed communications concern the same subject matter.  However, without the benefit of a privilege log, or the opportunity to review the subject documents theselves, the Court is unable to do so.  Among other things, Defendant seeks all emails in the "Sneaky Doug — Woodway — e mail" correspondence thread and all emails on the "lttr to chapco" email correspondence thread between Corio and Astilean as well as a "draft letter" and "OA" referenced by Corio in her December 5, 2012 email to Astilean.  Significantly, without a privilege log, or the documents, the Court cannot determine the subject matter of these materials, nor can the Court determine whether the subject matter overlaps with that of the Subject Exhibit.  Though emails and email attachments on the same email thread often concern the same subject matter, this is not necessarily the case here, particularly in light of the representations of Speedway's counsel and the deposition testimony of Alex Astilean.  The Court cannot complete the required second prong analysis under Fed. R. Evid. 502.  Nor can the Court consider, under

the third prong of the analysis, whether the undisclosed documents in fairness are to be considered together with the Subject Exhibit. The Court requires, at a minimum, a privilege log, which Plaintiff's counsel should already have provided to Woodway's counsel.

Given these circumstances, the Court is GRANTING Defendant's motion to the limited extent that Plaintiff is required to produce a privilege log, in accordance with the Federal Rules, within 14 days. Further the Court is directing Plaintiff's counsel to submit the subject documents to the Court for an *in camera* review within 14 days.

## V.  CONCLUSION

For the reasons set forth in this Memorandum and Order, Defendant's motion to compel is GRANTED, in part, and DENIED, in part. Plaintiffs shall produce a privilege log within 14 days. Plaintiff's counsel is further directed to submit the subject documents to the Court for an *in camera* review within 14 days.

**SO ORDERED.**

Dated: Central Islip, New York
       March 28, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge